## TANNER et al. v. DRAKE.
### No. 952.

Court of Civil Appeals of Texas. Eastland.
Feb. 5, 1932.

Rehearing Denied March 11, 1932.

Bonner, Bonner & Childress, of Wichita Falls, for appellants.

Blanton, Blanton & Blanton, of Abilene, for appellee.

HICKMAN, C. J.

This is a suit for damages for personal injuries instituted by appellee against H. J. Tanner, A. Campbell, and B. Byrd as individuals and partners doing business under the name of Campbell & Byrd Investment Company, and also against Campbell-Byrd Corporation and Texas-Unity Oil Company. He alleged that Tanner, Campbell, and Byrd were partners doing business under the name of Campbell & Byrd Investment Company at the time he received his injuries, that thereafter Campbell-Byrd Corporation was incorporated and the assets of the partnership were fraudulently transferred to it for the purpose of defrauding him, and that the Texas-Unity Oil Company was the owner of the lease upon

which the oil well, in which he was running casing at the time of his injury, had been drilled. His injuries were serious and permanent, consisting in the loss of a foot. Various grounds of negligence, not here necessary to detail, were alleged and found to exist by the jury, and judgment was rendered on the findings for $17,500. This judgment was first rendered jointly and severally against "the defendants, H. J. Tanner, the Campbell & Byrd Investment Company, a partnership composed of H. J. Tanner, A. Campbell and B. Byrd, and the said partners, H. J. Tanner, A. Campbell and B. Byrd, individually, and as members of said partnership firm, and Campbell-Byrd Corporation." Upon motion for rehearing it was modified to the extent that no personal judgment was rendered against A. Campbell and B. Byrd, both of whom were nonresidents. Judgment ran in favor of Texas-Unity Oil Company. From this judgment Campbell-Byrd Corporation and H. J. Tanner have perfected this appeal.

Campbell & Byrd Investment Company was engaged in the business of drilling oil wells under contracts with oil companies, and carried compensation insurance covering their employees. After appellee sustained his injuries he made application to the Industrial Accident Board for compensation, but his application was denied on the ground that he was not an employee within the meaning of the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), but was an independent contractor. No appeal was prosecuted from that order of the Board, but this suit was instituted for the recovery of damages for personal injuries, based upon the theory that appellee was an independent contractor and not an employee at the time he received his injuries.

The first proposition for consideration is that a peremptory instruction in favor of appellant should have been given, because appellee was an employee, as a matter of law, and not an independent contractor. The jury found that he was an independent contractor. The facts with reference to his employment essential to a disposition of this question are: Appellee was a casing crew foreman. In the transaction of his business he made the contracts and employed other men to act as members of his crew. He paid and discharged these men, and instructed them with reference to their work. Appellant Tanner, who claims to have been the agent and general manager for Campbell & Byrd Investment Company, employed appellee to run a string of pipe in a well, agreeing to pay him the customary charge of $40 for the services of him and his crew. Appellee's men were paid $6.50 each, which left $9 as appellee's earnings on the job. The pay which he received in excess of that received by his men was on account of his securing the contracts and furnishing a car and gasoline to transport the men to and from their work. Appellee also furnished the tools customarily furnished by a casing crew contractor, known as a "casing pole" and a "neverslip." Under the arrangements the general contractor, Campbell & Byrd Investment Company, furnished its driller and tool dresser, as well as its drilling machinery, and the power for hoisting the pipe. The driller and tool dresser ran the engine and machinery. The work of the casing crew and that of the driller and tool dresser "dovetailed" with each other. The latter two were under the general employment of the Campbell & Byrd Investment Company, who paid them their wages. The whole operation of pulling and running the casing was left entirely to appellee's management and supervision, and, had anything gone wrong, he would have been responsible therefor. The power for the purpose of raising and lowering the casing was applied by the driller and tool dresser upon signals by appellee.

It is appellants' contention that these facts establish conclusively that appellee was not an independent contractor, and the case of Ætna Life Ins. Co. v. Culvahouse (Tex. Civ. App.) 10 S.W.(2d) 803, 806, is relied upon as authority for the contention. There is one important distinguishing fact between this case and the Culvahouse Case, as is disclosed by the following finding in that case: "The work to be done by the casing crew was under the general direction of the driller, who in this instance was one Dutton, an employee of Caudle. Appellee's injuries were the result of a fall from the drilling rig while engaged in tying back the blocks under the direction or orders of Dutton."

■ In this case the work was being done, not under the general direction of the driller, nor were appellee and his men working under the driller's orders, but appellee himself was in charge of the operations, representing the will of the employer only as to the result of his work. By the test quoted in the opinion in the Culvahouse Case, which is the one of general acceptation, appellee was an independent contractor. We shall not enter into a discussion of this much-discussed question, but think it sufficient to state that the evidence supports the jury's finding that appellee was an independent contractor, and the court did not err in overruling appellant's request for a peremptory instruction based upon a contrary theory. Shannon et al. v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522; Security Union Ins. Co. v. McLeod (Tex. Com. App.) 36 S.W.(2d) 449; Evans v. Bryant (Tex. Civ. App.) 29 S.W.(2d) 484.

■ The next contention is that, if appellee was an independent contractor, then the entire operation was under his exclusive con-

trol; the driller and tool dresser were his employees, in so far as the particular operation was concerned; and appellants were not chargeable in law with their acts of negligence. The case of Dato v. Geo. W. Armstrong & Co. (Tex. Civ. App.) 245 S. W. 955, is relied upon as authority for this contention. It is stated by appellants in their brief that the decision of the Court of Civil Appeals in this case was reversed by the Supreme Court on other grounds in 260 S. W. 1024. We cannot agree that this case was reversed on other grounds. We have experienced some difficulty in determining the exact holding of the Commission of Appeals, but whatever reason prompted its holding would obtain in the case before us and operate to cause us to overrule this contention of appellants. The jury findings in this case were, in effect, the same as in that case on the question of whose servant was negligent. We do not deem it advisable to enter into an extended discussion of the general question of whether a loaned servant is the servant of his original master or of the person to whom he is lent in respect to his acts while in the discharge of his duties to the latter. These servants were not lent. That question was exhaustively discussed in Standard Oil Company v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 256, 53 L. Ed. 480, and has been many times discussed and applied in cases citing that case. It is our opinion that, under the facts before us, the driller and tool dresser remained the servants of their original employers and never became the servants of appellee. As is clearly stated in the opinion in the case of Standard Oil Co. v. Anderson, supra: "But when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be co-operation and co-ordination, or there will be chaos. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and is not enough to show that there has been a change of masters."

But, even if the tool dresser and driller were the servants of appellee while engaged in running this casing, the request for a peremptory instruction should nevertheless have been refused. Appellee's judgment rests, not alone upon a finding of negligence on the part of the driller and tool dresser while under his direction, but upon negligent acts of appellants' servants, committed prior to the time appellee came on the premises to do his work. These negligent acts would clearly not be the acts of appellee's servants.

■■ Upon a finding by the jury that the assets of Campbell & Byrd Investment Company were transferred to Campbell-Byrd Corporation for the fraudulent purpose of defeating appellee's claim for damages for personal injuries, judgment was rendered against such corporation on account of such personal injuries for $17,500. We do not pass upon the question of whether there was any evidence justifying the submission of this issue. Assuming that there was, the judgment was nevertheless erroneous. There were neither allegations nor proof that the transferee assumed liability for this claim. It is well settled that one to whom property is fraudulently transferred, so long as the property remains in his possession, is not liable to a personal judgment in favor of the creditors of the transferor. He becomes a trustee of the transferred property. No other remedy than that of damages for personal injuries was sought against the transferee corporation in this case, and its motion for peremptory instruction should have been granted. May v. Merchants' National Bank (Tex. Civ. App.) 152 S. W. 1194; Kessler v. Halff, 21 Tex. Civ. App. 91, 51 S. W. 48; Kane v. Ammerman (Tex. Civ. App.) 148 S. W. 815.

■ After a careful consideration of all the facts in the light of the authorities, we have decided that the trial court did not err in overruling the request of appellant Tanner for a peremptory instruction based upon the contention that there was no evidence authorizing the submission of the issue of partnership to the jury. Since the case, as to this appellant, must be retried, for reasons hereinafter disclosed, we shall not discuss this evidence further than to state that, while it is not satisfactory, still it should not be held that no evidence whatever upon the subject exists. It has been often held that the fact of sharing in profits is some evidence on the question of partnership.

In the court's charge the word "partnership" is thus defined: "A partnership is where two or more persons unite money or skill and service, or both, in a joint enterprise, having a community interest in the profits. Where one person advances funds, and another furnishes his personal skill in carrying on the business and is to share in the profits, it is a partnership."

■ Various objections were timely made to this definition, some of which we must sustain. It was undisputed in the evidence that Tanner shared in the profits, if any were made, from the drilling operations. According to his testimony he was general manager of the business of Campbell & Byrd Investment Company, and, after the completion of a well, if sufficient profits had been made, he was paid $150, not as a partner, but in consideration of his services as manager and agent. The second sentence of the definition above quoted instructs the jury, in effect, to find that the relation of partnership existed between Tanner, Campbell, and Byrd. The latter two advanced funds, and Tanner furnished his personal skill in carrying on the

business, and shared in the profits. The definition singled out these facts and instructed the jury that same constituted the relation between the parties as that of a partnership. The test of a partnership is essentially a community of profit, an interest in the profits, as profits, as distinguished from an interest therein as compensation for services. As is well stated by Justice Boyce in Pyron v. Brownfield (Tex. Civ. App.) 238 S. W. 725, 727: "An agreement to share in the profits of an enterprise or business does not of itself determine the question as to whether a partnership between the parties is thereby created, but all the other facts and circumstances are to be considered in connection with such agreement to ascertain whether the profits are to be received merely as compensation for services rendered as an agent or as a principal interested in the business."

That this language well expresses the rule as now followed by the courts of our state is evidenced by a consideration of the following authorities: Buzard v. Bank of Greenville, 67 Tex. 83, 2 S. W. 54, 60 Am. Rep. 7; Kelley Co. v. Masterson, 100 Tex. 38, 93 S. W. 427; Fink v. Brown (Tex. Com. App.) 215 S. W. 846; Southern Surety Co. v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 2 S.W.(2d) 310.

The definition above quoted was clearly a charge on the weight of the evidence; it omitted an essential element of a partnership, and amounted in effect to a peremptory instruction on the issue of partnership. For this error a retrial must be ordered as between appellee and appellant Tanner.

There are a number of other assignments in the record, but they are of such a nature as that they will likely not arise upon another trial, and will not therefore be discussed. The judgment below, in so far as it denied a recovery against Texas-Unity Oil Company, A. Campbell, and B. Byrd, individually, will not be disturbed. In so far as recovery was awarded against appellant Campbell-Byrd Corporation, same will be reversed and here rendered against appellee, and in all other respects that judgment will be reversed and the cause remanded.

Undisturbed in part, reversed and remanded in part, and reversed and rendered in part.