## HOLUB v. SWORD S. S. LINE, Inc.
## THE WESTERN SWORD.
### No. 10369.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1942.

H. C. Hughes, of Galveston, Tex., for appellant.

W. M. Ryan, of Houston, Tex., for appellee.

Before HUTCHESON and McCORD, Circuit Judges, and KENNERLY, District Judge.

KENNERLY, District Judge.

On July 10, 1941, the Steamship "Western Sword" was at the Port of Galveston, Texas, to take on a cargo of sulphur to be shipped by the Texas Gulf Sulphur Company. Appellant and another, both employees of the Sulphur Company, went upon the Ship on that date to inspect her holds and determine whether they were clean and in condition for taking on a cargo of sulphur. The Ship had formerly been equipped with cargo battens (planks or strips of wood) held in place by "cleats"

(also called "angle irons" or "cargo board hangers") made of iron. The cargo battens were not needed in shipping sulphur and had been removed, but the cleats remained. It was necessary in inspecting the Ship for Appellant to climb about, and in doing so, he, instead of using the ladders belonging to the Ship, which were available, used the cleats, and because the bolt or bolts holding it had rusted, one of the cleats, when his weight was placed upon it, broke or came loose, causing him to fall, and he was injured.

Thereupon, Appellant brought this suit in Admiralty against the Ship for damages for such injury, charging unseaworthiness of the Ship and that she and her owners were negligent.[1]

The Owners appeared, answered specially, and only as Claimants of the Ship, denied negligence, claimed Appellant to be guilty of negligence, pleaded assumed risk, and set forth that Appellant had been paid compensation for his injury under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and that this suit, if prosecuted at all, should be prosecuted by Appellant's employer, the Sulphur Company. Judgment went for Appellee, and Appellant is here complaining. The Trial Judge filed Findings of Fact, which we find well supported by the evidence, and which we approve.

■ The cleats were placed and maintained in the Ship solely to hold the cargo battens in place and not for use by Appellant or others in climbing about inspecting the Ship. Appellee owed Appellant no duty to maintain them so that Appellant could safely use them to climb upon, and the Ship was not rendered unseaworthy because of Appellee's failure to do so, nor was such failure negligence unless Appellee knew, or under the facts should have known, or was charged with notice, that Appellant intended to and would so use them. The Queen Elizabeth, D.C., 209 F. 712, Consolidation Coastwise Co. v. Conley, 1 Cir., 250 F. 679, 680, New Orleans Coal & Bisso Towboat Co. v. United States, 5 Cir., 86 F.2d 53, Smith v. United States, 5 Cir., 96 F.2d 976.

■ The Trial Judge found that Appellee had no means of knowing and did not know before the injury that Appellant was on the Ship for the purpose of inspecting it, and had no reason to believe that he would go on the Ship and make use of the cleats in climbing to make the inspection. Appellant and several of the other witnesses testified to a local custom of persons using the cleats instead of the ladders in inspecting ships, but the Trial Judge made no specific finding on the point. He did find that if there was such a local custom, that it was conclusively shown that Appellee did not know of it. He also found that there was no such general custom, but that it was the general custom, which was known to Appellee, for persons so inspecting ships to make use of ladders, and that ladders were available on the Ship and would have been furnished Appellant at his request. That neither Appellant nor his fellow employee requested the use of ladders.[2]

The Judgment for Appellee was right. It is affirmed.

---

[1] The wording of the charge of unseaworthiness and negligence as found in Appellant's Libel is as follows:

"That the S. S. Western Sword and the owners thereof were guilty of negligence in the following particulars:

"(a) In failing to have their ship in proper and seaworthy condition for the use of persons like the libelant who would have business upon said ship;

"(b) In failing to have their ship properly inspected so that they might have discovered the condition of said cargo board hanger;

"(c) In failing to provide the libelant with a safe place to do the work which those in charge of the S. S. Western Sword and its owners knew had to be performed in the loading of sulphur cargoes.

"(d) In failing to have a safe cargo board hanger (cleats) upon said ship in a place where it was well known that those doing such work as required by libelant would probably and necessarily go."

[2] Findings 7 and 8 of the Trial Judge are as follows:

"7. Libelant and his witnesses testified to a local custom of using the cleats for the purpose of climbing up the sides of the vessel and making these inspections. There was no evidence, however, of any general custom and it was shown conclusively that the ship's officers knew of no such local custom. The general custom was to make use of ladders, which were available on the vessel at the time and would have been furnished upon request. They were not requested by libelant or his fellow employee. The ship's officers had no means of knowing, before the injury, that libelant was on the vessel for the purpose of making an inspection; and no reason to believe that he would make

use of the cleats in climbing up to make his inspection. There was no evidence that this particular vessel had ever been inspected before by employees of the Sulphur Company, and no evidence justifying the Court in concluding that the ship's officers might have anticipated the use of the cleats for such purpose.

"8. Of course the owners of the vessel owed libelant the duty to furnish him a safe place to work, and to warn him of any hidden danger; but this is not a case in which defective appliances were furnished or where the owners or officers of the vessel had notice of a local custom or reasonable grounds to believe that libelant would use the cleats for the purpose of climbing up the sides of the vessel."